Merrimack
No. 2008-438

THE STATE OF NEW HAMPSHIRE

v.

SHAWN R. CUNNINGHAM

Argued: June 11, 2009
Opinion Issued: July 10, 2009

*Kelly A. Ayotte*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Kimberly Thayer*, public defender, of Dover, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Shawn R. Cunningham, appeals his conviction by a jury for two counts of simple assault. *See* RSA 631:2-a (2007); RSA 651:6, I(h) (2007); RSA 651:6, I-a (2007) (amended 2008). He argues that the Superior Court (*Sullivan*, J.) erred by denying his motion to dismiss the charges. We affirm.

Viewing the evidence in the light most favorable to the State, we conclude that the jury could have found the following facts. The defendant is a correctional officer at the Merrimack County House of Corrections (facility). The instant charges stem from an incident that occurred on December 31, 2006. At approximately 5:00 a.m. that day, the Concord police brought the victim to the facility on charges that included driving while intoxicated.

Then-Corporal Jason Henry and other officers met the police and victim in the pre-booking area, and Henry conducted a pat-down search. Henry found the victim to be tense and agitated. After the pat-down search, Henry took off the victim's handcuffs. The victim then "playfully" punched the blue mat behind him. When Henry told him to stop, he did. Henry asked the victim to remove his boots and put them in the plastic bin provided for his personal property. He complied, although he removed his boots aggressively. He also stared at Henry in an apparent effort to intimidate him. Henry told the victim to "keep moving, please," and he complied.

The victim then went into the booking area where the defendant directed him to remove his sweatshirt. The victim balked at doing so because he was not wearing a t-shirt. Once he was given one, he took off his sweatshirt and angrily slammed it into the plastic bin.

The defendant asked the victim "a couple of times" to put on the t-shirt, but he refused and tossed it behind him. The victim was then directed to a holding cell, which is used for new inmates as well as those who are under the influence of drugs or alcohol. As the victim walked toward the holding cell with the defendant behind him, the defendant shoved him in the small of the back and forcefully pushed him against the cell's steel and glass reinforced wall.

The defendant's fellow officers believed that shoving the victim was unnecessary. They did not perceive the victim, who had complied with nearly all of their requests, including the request to walk toward the holding cell, to pose a threat. The defendant's fellow officers did not believe that the victim did anything to warrant being shoved. They did not believe that the victim had done anything to indicate that he was about to assault them.

The defendant testified that he shoved the victim because he believed that the victim was walking too slowly and he was concerned that the victim was about to spit on him or assault him. The defendant testified that he shoved the victim "to keep him off balance." The defendant admitted, however, that up until this time, the victim had not directed any physical conduct at the defendant or his fellow officers. As he walked toward the holding cell, the victim's hands were at his side.

The standard procedure when an inmate has complied with the request to enter the holding cell is to close the cell door and allow the inmate a chance to cool down. The defendant, however, followed the victim into the holding cell and began a heated exchange with him. At some point, the defendant and victim began wrestling. The other officers soon handcuffed the victim. The victim resisted at first, but then complied. Although the victim then began to yell at the defendant, because he was handcuffed and was still in the holding cell, the other officers did not perceive the victim as a threat.

The other officers left the cell. The defendant, however, again began a heated exchange with the victim. During this exchange, the defendant and victim were approximately six feet apart. The victim was handcuffed and his back was against the cell wall. The defendant, believing that the victim was about to charge him, commanded the victim to sit down. When the victim refused and began to call the defendant names, the defendant advanced toward him so that the space between them was less than a foot, and the victim backed away. The defendant continued to order the victim to sit down and then shoved him into a corner. When the victim still did not sit down, he grabbed one of the victim's legs and dropped him to the ground.

The defendant then yelled at the victim to stay down as the defendant left the cell. Because of his altercation with the victim, the defendant was sent home early.

The defendant testified that he wanted the victim to sit down so that the victim would be at a disadvantage and the defendant would be able to leave the cell safely. The defendant testified that he made the victim fall to the floor because the victim "def[ied] him."

The defendant's fellow officers, on the other hand, believed that this use of force was unnecessary. As one officer testified: "In my mind, [the victim] [did not] pose a threat . . . . I mean, he's back — again back [in] the cell. He's in handcuffs. We were all done as far as . . . I was concerned." Nor did they believe it necessary that the victim sit. As another officer explained: "To get someone to sit down in the jail that's intoxicated, if they're in the cell already, there's no reason for them to sit down, exactly. If they want to stand up, you're only going to aggravate them more." One of the officers testified that, in his opinion, the defendant lost his temper with the victim and that this is why, even after the victim was handcuffed, he continued to have a heated exchange with him and ultimately grabbed his leg and dropped him to the floor.

The grand jury returned two indictments for simple assault against the defendant. *See* RSA 631:2-a. The first indictment alleged that the defendant committed simple assault when he shoved the victim in the small of the back and pushed him into the holding cell's wall. The second indictment alleged that the defendant committed simple assault when he grabbed one of the victim's legs and dropped him to the ground. Although simple assault is a misdemeanor, because the defendant allegedly committed the assaults while on-duty as a correctional officer, the charges were subject to sentence enhancement. *See* RSA 651:6, I(h), I-a.

Before trial, the defendant filed a notice of defense of justification. At trial, he argued that his actions were justified under RSA 627:5, I (2007), which provides:

> A law enforcement officer is justified in using non-deadly force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest or detention or to prevent the escape from custody of an arrested or detained person, unless he knows that the arrest or detention is illegal, or to defend himself or a third person from what he reasonably believes to be the imminent use of non-deadly force encountered while attempting to effect such an arrest or detention or while seeking to prevent such an escape.

At the close of the State's case, the defendant moved to dismiss the charges on the ground that the State had failed to prove beyond a reasonable doubt that his use of non-deadly force was not justified under RSA 627:5, I. Based upon its review of the evidence, which included several compact disc recordings of the incident, the trial court denied the motion, and the defendant, thereafter, presented an affirmative case.

The sole issue for our review is whether the trial court erred by denying the defendant's motion to dismiss. Because the defendant chose to present a case after unsuccessfully moving to dismiss, the issue on appeal is the sufficiency of the evidence and we review the entire trial record to make that determination. *State v. Hull*, 149 N.H. 706, 711-12 (2003).

To prevail upon his challenge to the sufficiency of the evidence, the defendant had to prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Evans*, 150 N.H. 416, 424 (2003).

■ To convict the defendant of simple assault, the State had to prove beyond a reasonable doubt that he "[p]urposely or knowingly cause[d] bodily injury or unprivileged physical contact to another." RSA 631:2-a, I(a). To obtain the sentence enhancement, the State also had to prove, beyond a reasonable doubt, that the assaults occurred when the defendant was acting as an on-duty correctional officer. *See* RSA 651:6, I(h), I-a. Because the defendant raised justification under RSA 627:5, I, as a defense, the State also had to prove beyond a reasonable doubt that it was unreasonable for the defendant to believe that it was necessary to use the force that he did either to effect the victim's detention or to defend himself or the other officers against the victim's imminent use of non-deadly force. *See* RSA 626:7, I(a) (2007). Whether the defendant's beliefs were "reasonable" is determined by an objective standard. *See State v. Leaf*, 137 N.H. 97, 99 (1993) (construing comparable language in statute concerning use of force by persons with special responsibilities, such as parents). A belief that is unreasonable, even though honest, will not support the defense. *See id.*

At trial, the defendant conceded that he had knowingly or purposely shoved the small of the victim's back and had swept one of the victim's legs out from under him. *See* RSA 631:2-a, I(a). He also conceded that he engaged in this conduct while on duty as a correctional officer. *See* RSA 651:6, I(h), I-a. The issues for the jury, therefore, were whether the defendant's physical contact with the victim was unprivileged, *see* RSA 631:2-a, I(a), and/or justified. *See* RSA 627:5, I.

Considering the evidence and all inferences to be drawn from it in the light most favorable to the State, we hold that a rational juror could have

found that the defendant's physical contact with the victim was unprivileged and unjustified. A rational juror could have found that the defendant's belief that it was necessary to use force to effect the victim's detention or to defend himself or the other officers against the victim's imminent use of non-deadly force was not objectively reasonable.

■ With respect to the first assault — the shove to the victim's back — we conclude that there was evidence from which a rational juror could have found that the victim was not, at that point, a threat to the defendant or to his fellow officers. When the defendant shoved the victim, the victim was walking with his back facing the officers, his hands to his sides, and was complying with the request that he walk toward the holding cell. There was evidence from which a rational juror could have found that, before the shove, the victim had not engaged in *any* behavior that would have caused a reasonable officer to believe that he was about to assault the officers. There was also evidence from which a rational juror could have found that, to that point, the victim had not engaged in any physical behavior that was directed at any of the officers. A rational juror could also have concluded that because the victim did not pose a threat to any of the officers, it was not objectively reasonable for the defendant to have shoved him in the small of the back.

■ We likewise conclude that with respect to the second assault — taking the victim's leg out from under him — there was evidence from which a rational juror could have found that the victim was no longer a threat to the officers at that point. He was handcuffed and contained in the cell. Forcing him to sit down while in the cell was not necessary and, according to the defendant's fellow officers, served only to escalate the situation. A rational juror could have concluded, based upon testimony from the defendant's fellow officers, that the defendant grabbed the victim's leg because he was angry, not because he felt threatened. A rational juror could also have found that even if the defendant felt threatened by the victim, his belief that the victim was about to engage in non-deadly force, even after he was handcuffed, was not objectively reasonable. A rational juror could also have concluded that because the victim was no longer a threat to any of the officers, it was not objectively reasonable for the defendant to have swept his leg out from under him.

Viewing this evidence and all inferences to be drawn from it in the light most favorable to the State, we conclude that a rational juror could have found beyond a reasonable doubt that the defendant committed simple assault against the victim, once by pushing him in the back and again by

pulling his leg out from under him. A rational juror could also have found beyond a reasonable doubt that the defendant's belief that it was necessary to use force was unreasonable.

For all of the above reasons, therefore, we affirm the defendant's convictions.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.