Carroll
No. 2009-372

# THE STATE OF NEW HAMPSHIRE

v.

# WARD BIRD

Argued: June 15, 2010
Opinion Issued: October 27, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester, (*Mark L. Sisti* and *Adam K. Cook* on the brief, and *Mr. Sisti* orally), for the defendant.

HICKS, J. The defendant, Ward Bird, appeals his conviction for criminal threatening. *See* RSA 631:4 (2007). On appeal, he argues that the Superior Court (*Houran*, J.) erred by excluding evidence of a witness's prior bad acts of animal cruelty. He also asserts that the trial court should have set aside the jury's verdict because: (1) the indictment was insufficient to allege the crime of felony criminal threatening; (2) there was insufficient evidence to demonstrate that he committed felony criminal threatening; and (3) the State did not negate his justification of defense of property. Finally, he contends that the trial court committed reversible error when it enhanced his sentence under RSA 651:2, II-g (2007). We affirm.

Viewing the evidence in the light most favorable to the State, the jury could have found or the record supports the following. Christine Harris arranged to meet a real estate agent on March 27, 2006, at his office to view a property for sale in Moultonborough owned by Patricia Viano that Harris was interested in purchasing. That day, she called the real estate agent to inform him she was running late and could not make the appointment. Because he could not meet her later that day, she decided to look at the property herself.

During her drive to the property, she became lost and stopped at the home of the defendant's niece, where she asked for directions. The niece told her that the most direct route to the property was Emerson Path to Yukon Trail, and then a road to the left with a small bridge over a stream. The niece told her that if she passed a white "job trailer," she was on the wrong property. After Harris left the home of the defendant's niece, the niece telephoned the defendant to warn him that Harris was going to look at the Viano property and that she might show up on his property. She also told the defendant that Harris was driving a Ford Ranger.

Harris followed the niece's directions and drove past signs that stated "Private road, keep out" on Emerson Path and "no trespassing" on Yukon Trail. She missed the left hand turn off of Yukon Trail, drove past the white trailer, and ended up in front of the defendant's house. She parked her car and got out. The defendant emerged from his home "screaming, get the F off my property." He came down from his porch, continuing to yell profanities while waving a gun at her. At trial, she testified that he pointed

the gun "[t]owards" her. Harris asked the defendant whether he was the boyfriend of the woman selling the property. He repeated his command for her to leave his property. Harris eventually climbed back into her car, mouthing "[w]hat an ass." The defendant then walked off the porch toward her waving his gun as she backed out of the driveway.

The defendant was indicted for criminal threatening. At trial, Harris testified that she had planned to purchase the property with her own funds as well as "state grants and federal grants" because she wanted to start an educational farm. She also stated she abandoned the idea after her encounter with the defendant. On cross-examination, the defendant inquired about her reasons for planning an educational farm, particularly her experience with animals. She responded that she planned to hire others with "more expertise" to handle "the cattle, the sheep, the goats." Based upon this response, the defendant asked the court to rule that Harris had "open[ed] the door" to cross-examination about her January 2008 convictions in district court for animal cruelty. The defendant argued this evidence would cast doubt upon Harris's "ability to take care of animals." The court denied the motion.

At the close of the State's case, the defendant moved to dismiss the criminal threatening charge, arguing that the State had not presented sufficient evidence to negate his claim of defense of property and had not established that the gun he waved was a deadly weapon. The court denied the motion, ruling that a reasonable factfinder could conclude that the State had proven all of the elements of the crime. Prior to closing arguments, the defendant requested a jury instruction on defense of property with non-deadly force. The trial court agreed to give the instruction.

The jury found the defendant guilty of criminal threatening. The defendant moved to set aside the verdict, contending that the indictment did not sufficiently allege the crime of criminal threatening, that the evidence was insufficient to prove criminal threatening, and that a rational trier of fact could not have found other than that the defendant reasonably believed it necessary to use non-deadly force to terminate Harris's trespassing. The trial court denied the motion. In April 2009, the court sentenced the defendant to prison for no less than three and no more than six years, citing RSA 651:2, II-g, which imposes a mandatory minimum sentence of three years "[i]f a person is convicted of a felony, an element of which is the possession . . . of a deadly weapon, and the deadly weapon is a firearm." This appeal followed.

*I. Cross-Examination*

The defendant first argues that the trial court erred by excluding evidence of Christine Harris's 2008 misdemeanor convictions for animal

cruelty. He contends that the State elicited testimony from Harris that left a "misleading impression" with the jury that Harris was "an innocent, caring for animals type person who inadvertently trespassed on [the defendant's] posted property" and that cross-examination was necessary to correct this false impression.

■ We review the trial court's decision on the admissibility of evidence for an unsustainable exercise of discretion. *See State v. White*, 155 N.H. 119, 123 (2007). Because the defendant argues that the State introduced admissible evidence that created a misleading impression, we are concerned with the application of the specific contradiction branch of the opening-the-door doctrine. *State v. Wamala*, 158 N.H. 583, 589 (2009). The specific contradiction doctrine applies when one party has introduced admissible evidence that creates a misleading advantage. *Id.* The opponent is then allowed to introduce previously inadmissible evidence to counter the misleading advantage. *Id.* The rule prevents a party from successfully excluding evidence favorable to his opponent, and then selectively introducing this evidence for his own advantage, without allowing the opponent to place the evidence in proper context. *Id.* at 590. The initial evidence must, however, have reasonably misled the fact finder in some way. *Id.*

■ We agree with the trial court that the State did not create a misleading impression that needed to be placed in proper context. The State asked, "Now when you were looking for property that day, did you have a check in your pocket for the full amount of [the] property?" Harris replied,

> No. I was looking to do an educational farm, so I was looking for large parcels of property and there was a timber piece that was up behind . . . the Viano's . . . . I needed a large piece to do the educational farm for it to be self-supporting. And as far as financing, . . . [i]t was to be able to get state grants and federal grants to do an educational farm.

The State did not ask any other questions about Harris's purpose in looking for the Viano property that day or her ability to care for animals. Rather, it was the defendant on cross-examination who asked questions, such as "Do you have experience taking care of animals?" and "Are you trying to tell the jury that you're a humanitarian type?," intended to elicit statements from Harris about her ability to care for animals. The trial court did not unsustainably exercise its discretion by not permitting the defendant to cross-examine Harris about her prior convictions for animal cruelty.

## II. Defendant's Claim of Defense of Premises

The defendant next contends that the trial court erred by denying his motion to set aside the verdict on the grounds that the State failed to rebut his claim of defense of premises under RSA 627:7 (2007). Specifically, he asserts that Harris criminally trespassed on his property, *see* RSA 635:2 (2007), and, therefore, he was justified in using non-deadly force to persuade her to leave. According to the defendant, use of non-deadly force to terminate a trespass is *"per se* reasonable" under RSA 627:7. The State counters that the defendant's waving of the gun was "unreasonable" and constituted deadly force.

We will uphold a trial court's denial of a motion to set aside the verdict unless its ruling was made without evidence or constituted an unsustainable exercise of discretion. *State v. Kousounadis*, 159 N.H. 413, 421 (2009). To overturn the trial court's decision, the defendant must establish that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Gruber*, 132 N.H. 83, 92 (1989).

RSA 627:7, entitled "Use of Force in Defense of Premises," governs when a person is justified in using non-deadly force to terminate the commission of a criminal trespass. It states, in relevant part:

> A person in possession or control of premises or a person who is licensed or privileged to be thereon is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to prevent or terminate the commission of a criminal trespass by such other in or upon such premises . . . .

The defendant raised this justification at trial. Thus, the State had to prove beyond a reasonable doubt that it was unreasonable for the defendant to believe "it necessary to . . . terminate the commission of [the] criminal trespass" by using non-deadly force. RSA 627:7; *see* RSA 626:7, I(a) (2007). Assuming without deciding that the defendant's actions constituted "non-deadly force," we focus our analysis upon whether it was reasonable for the defendant to believe it necessary to use such force.

Whether the defendant's belief was reasonable is determined by an objective standard. *See State v. Cunningham*, 159 N.H. 103, 107 (2009) (construing comparable language in statute concerning use of force by correctional officers). A belief that is unreasonable, even though honest, will not support the defense. *Id.*

Considering the evidence in the light most favorable to the State, a rational juror could have found that the defendant's belief that it was necessary to wave his pistol to terminate Harris's trespass was not objectively reasonable. While Harris drove past "no trespassing" signs onto the defendant's property, she had been given directions to follow the roads with these signs by the defendant's niece, who had then telephoned the defendant to tell him that Harris was going to look at the Viano property and might stop at his property, and that she was driving a Ford Ranger. *Cf. State v. Gilbert*, 473 A.2d 1273, 1275-76 (Me. 1984) (upholding the trial court's denial of a motion to acquit in a criminal threatening with a dangerous weapon case where evidence demonstrated that the victim was invited and expected at the defendant's home and, thus, was "neither a trespasser nor reasonably perceived as such by" the defendant). Harris also testified about her exchange with the defendant on arriving at the property. She testified that she asked the defendant if he was the boyfriend of the woman selling the property, and he responded by yelling "get the F off my property" and pointing a gun at her. We affirm the trial court's denial of the defendant's motion to set aside the verdict.

*III. Felony Criminal Threatening*

The defendant next contends that the indictment did not sufficiently allege felony criminal threatening because it did not state that he used, intended to use, or threatened to use the gun in a manner that "is known to be capable of producing death or serious bodily injury." RSA 625:11, V (2007). Therefore, according to the defendant, it only alleged misdemeanor criminal threatening. He also asserts that the evidence was insufficient to prove that he committed felony criminal threatening. We address each argument in turn.

"An indictment . . . is sufficient if it sets forth the offense fully, plainly, substantially and formally . . . ." RSA 601:4 (2001). To be sufficient to charge the variant of felony criminal threatening involved here, the indictment must have set out the following elements: that by *physical conduct*, the defendant "purposely place[d] or attempt[ed] to place another in fear of imminent bodily injury or physical contact," while using a deadly weapon. RSA 631:4, I(a), II(a)(2). A deadly weapon is "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V; *Kousounadis*, 159 N.H. at 425.

Here, the indictment alleged that the defendant:

did commit the crime of criminal threatening in that by his physical conduct he purposely attempted to place Christine

Harris in fear of imminent bodily injury or physical contact by waving [a] forty-five caliber handgun, a firearm and deadly weapon pursuant to RSA 625:11, V at Christine Harris while telling Christine Harris to get off of his property.

The indictment sufficiently alleged that the defendant threatened to use a "deadly weapon" in a manner that "is known to be capable of producing death or serious bodily injury." RSA 625:11, V; *Kousounadis*, 159 N.H. at 425. It stated that the defendant "wav[ed] a forty-five caliber handgun, a firearm and deadly weapon pursuant to RSA 625:11" at Harris while "telling . . . Harris to get off of his property." *Cf. State v. Deutscher*, 589 P.2d 620, 625 (Kan. 1979) (stating that "an unloaded revolver which is pointed in such a manner as to communicate to the person threatened an apparent ability to fire a shot and thus do bodily harm is a deadly weapon within the meaning expressed by the legislature in the assault statutes"). Implicit in these allegations is a threat to use the gun. Accordingly, the indictment sufficiently alleged each of the elements of felony criminal threatening. *See* RSA 631:4, I(a), II(a)(2).

■■ We next address whether the evidence was sufficient to support a conviction for felony criminal threatening. To prevail on a claim of insufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *Cunningham*, 159 N.H. at 107. Considering the evidence and all inferences to be drawn from it in the light most favorable to the State, a rational juror readily could have found that the defendant's actions of waving and pointing a gun toward the victim, while yelling "get the F off my property," constituted felony criminal threatening. *Cf. People v. Daniels*, 22 Cal. Rptr. 2d 877, 879 (Ct. App. 1993) (stating that evidence that defendant pointed a gun at a group of people in a living room and told them to lay down was sufficient to support an inference that the defendant's conduct was "a conditional threat constituting an assault"); *King v. State*, 790 S.W.2d 678, 680-81 (Tex. App. 1989).

### IV. Sentence Enhancement under RSA 651:2

The defendant contends that the trial court erred when it imposed a mandatory minimum three-year sentence pursuant to RSA 651:2, II-g. The defendant argues that, for the enhanced sentence to apply, the jury must have been instructed to unanimously find that "the defendant used a firearm as a deadly weapon." He claims "[t]he facts of the case do not support that he used the gun as a deadly weapon" because "[t]here was no evidence that he fired a shot or said he would shoot Ms. Harris."

■ RSA 651:2, II-g states, in pertinent part, that "[i]f a person is convicted of a felony, an element of which is the possession, use or attempted use of a deadly weapon, and the deadly weapon is a firearm . . . [t]he person shall be given a minimum mandatory sentence of not less than 3 years' imprisonment for a first offense." We have held that this enhancement does not apply "absent a specific finding by the jury that an element of the felony for which it convicted the defendant was possession, use or attempted use of a firearm." *State v. Russell*, 159 N.H. 475, 490 (2009) (quotation and brackets omitted).

Here, the trial court found that under *State v. Higgins*, 149 N.H. 290 (2003), RSA 651:2, II-g applied. In *Higgins*, we upheld the trial court's application of RSA 651:2, II-g even though the trial court failed to obtain a specific finding that the deadly weapon used to criminally threaten the victim was a firearm. *Higgins*, 149 N.H. at 301-02. There, the trial court recited the criminal threatening charges in the indictments to the jury, which alleged that the defendant used a firearm as a deadly weapon. *Id.* at 300. Prior to deliberations, the trial court also instructed the jury that to convict it had to find that a "deadly weapon" was used to commit the crimes and provided the definition of "deadly weapon" under RSA 625:11, V. *Id.* at 301. Finally, the only weapon the State argued that the defendant used to commit the offenses was a firearm. *Id.* at 302. Based upon these factors, we concluded that:

> a reasonable jury would understand that the "deadly weapon" element of both criminal threatening charges exclusively referred to the use of a firearm. Therefore, the guilty verdicts reflect a unanimous conclusion that the defendant used a firearm, and no other object, as a deadly weapon to commit the crimes. Accordingly, we conclude that the constitutional mandate of unanimity [of the jury] . . . was fully satisfied in this case.

■ We agree with the trial court that *Higgins* is instructive in this case. The trial court relayed to the jury the criminal threatening allegation that the defendant "wav[ed] a forty-five caliber handgun, a firearm and deadly weapon pursuant to RSA 625:11[,] V at Christine Harris while telling Christine Harris to get off his property." The victim's testimony demonstrates that the defendant waved a handgun throughout their encounter and that he pointed the handgun toward her while yelling at her to "get the F off my property." In light of the language of the indictment and the evidence presented at trial, we conclude that a reasonable jury would have understood that to find the defendant guilty it must find that the defendant used a firearm as a deadly weapon. Indeed, for the reasons stated above in section III, we reject the defendant's argument that the handgun could not

have been used as a deadly weapon because he did not fire any shots. Therefore, we conclude that the guilty verdict reflects a unanimous finding that the defendant used the firearm as a deadly weapon in the commission of the crime. Accordingly, the trial court did not misapply RSA 651:2, II-g to enhance the defendant's sentence.

*V. Mandatory Sentence*

Finally, the defendant argues that his mandatory sentence of three to six years in state prison was unconstitutional under the New Hampshire and Federal Constitutions because it was disproportionate to his crime. *See* U.S. CONST. amend. VIII, XIV; N.H. CONST. pt. I, art. 18. We first address the defendant's claim under the New Hampshire Constitution, referring to federal authority only to assist in our analysis. *See State v. Ball*, 124 N.H. 226, 231 (1983).

We address constitutional issues *de novo. State v. Hall*, 154 N.H. 180, 182 (2006). We must presume that the sentencing scheme is constitutional and we cannot declare it unconstitutional except upon inescapable grounds. *Duquette v. Warden, N.H. State Prison*, 154 N.H. 737, 745 (2007). For a sentence to violate Part I, Article 18 of the State Constitution it must be "grossly disproportionate to the crime." *Id.* (quotation omitted).

Our constitution "does not prohibit the legislature from constricting the independent exercise of judicial discretion by the requirement of mandatory sentences." *State v. Dean*, 115 N.H. 520, 523 (1975). RSA 651:2, II-g requires a mandatory minimum sentence of three years when a "person is convicted of a felony, an element of which is the possession, use or attempted use of a deadly weapon, and the deadly weapon is a firearm." RSA 651:2, II-g. Here, the defendant fails to persuade us that the sentencing scheme is unconstitutional because it necessarily results in sentences that are disproportionate. *See Dean*, 115 N.H. at 524 ("While the statutory penalties are indeed harsh and in many cases unjust, any amelioration of their mandatory nature is a function for the Legislature, not the courts." (quotation omitted)).

Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, *see State v. Dayutis*, 127 N.H. 101, 106 (1985); *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (stating "[s]evere mandatory penalties may be cruel, but they are not unusual in the constitutional sense"), we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.