# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0345, <u>State of New Hampshire v. Joshua J. DeBoer</u>, the court on April 12, 2017, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Joshua J. DeBoer, appeals his convictions following a jury trial in Superior Court (<u>O'Neill</u>, J.) on two misdemeanor counts of disobeying an officer, <u>see</u> RSA 265:4, I(c) (2014), and one misdemeanor count of reckless conduct, <u>see</u> RSA 631:3 (2016). We affirm.

<u>I. Facts</u>

The jury could have found the following facts. Shortly before 1:00 a.m. on a Sunday in October 2015, a Laconia police officer observed a "newer type Jeep" that had a "boxy shape with . . . flares and . . . round headlights" pass him on Weirs Boulevard. The officer's radar unit indicated that the vehicle was traveling 66 miles per hour in a 35-mile-per-hour zone. The officer turned his cruiser around and attempted to "catch up to the vehicle." The officer observed the vehicle traverse along Union Avenue. The officer radioed Officer Armstrong and asked him to follow the vehicle so as to identify it.

Armstrong saw a small sedan and a "boxy" sports utility vehicle (SUV) "coming up behind it" at a "very, very quick pace." Armstrong observed the "boxy" SUV "brake at such a short distance that the nose of the vehicle went down and the back of the vehicle went up, indicating that the vehicle was stopping short or had been traveling at a high rate of speed and was now coming to a stop." Armstrong activated "all of the emergency lights" on his vehicle and made a U-turn. As Armstrong drove down Union Avenue, he observed the SUV "still moving at a very healthy clip." He then saw the SUV turn right onto Elm Street, without a directional signal or brakes being used. According to Armstrong, the intersection of Union Avenue and Elm Street is "very dangerous" because there is pedestrian traffic there "at all hours of the day." Armstrong testified that, "even at 1 or 2 in the morning there are still people that are walking to and from the Irving Station, to and from McDonald's, and just [in] that general area" and "there can always be somebody out on the sidewalk."

Armstrong continued to pursue the SUV. He observed that the distance between his vehicle and that of the suspect "was just growing" despite

Armstrong's efforts to "close that gap." As Armstrong's vehicle entered a curve in the road, he became concerned that he was traveling too quickly to avoid the SUV if it came to a stop. Accordingly, he attempted to "slide into the left lane," but he lost control and "total[led] his cruiser."

Meanwhile, Officer Mailloux was driving east on Elm Street toward Union Avenue. He saw the SUV travel around a corner at a high rate of speed. Mailloux's radar unit emitted a high-pitched tone, which indicated that the SUV was going well over the 30-mile-per-hour speed limit. Mailloux estimated that the SUV was traveling at more than 75 miles per hour. Mailloux turned on all of the emergency lights in his vehicle as the SUV passed him and followed the vehicle "down Elm Street towards the intersection of Parade Road and Meredith Center." Once Mailloux arrived at the intersection, he could no longer see the SUV. He turned off his emergency lights and continued driving up Parade Road. He then saw the SUV ahead. He followed it with his emergency lights turned off. The SUV then "[took] off at a high rate of speed." Mailloux estimated that, at this point, the SUV was traveling at more than 100 miles per hour.

Mailloux observed the SUV cross a double-yellow line to pass another vehicle. Mailloux activated his emergency lights again so that the other vehicle would pull over, which it did. Mailloux then continued his pursuit of the SUV with his emergency lights off. The SUV continued to speed. Mailloux testified that he followed the SUV for "probably two miles" and observed that its "speeds were consistently about 80 to 100 miles an hour." As the SUV approached Meredith, it began to slow down. Believing that it was now safe to conduct a motor vehicle stop, Mailloux activated his emergency lights. Eventually, the SUV slowed down further and stopped. Mailloux described the SUV as a dark, 2006, "Hum-Vee" or "Hummer." Eventually, Mailloux arrested the driver, the defendant in this case.

The defendant was charged with two misdemeanor counts of disobeying an officer. The first charge alleged that he disobeyed an officer when he increased his speed so as to elude pursuit by Mailloux (the Mailloux charge). See RSA 265:4, I(c). The second charge alleged that the defendant disobeyed an officer by failing to stop when Armstrong signaled him to do so by using "audible or visual emergency warning signals" (the Armstrong charge). Id. He was also charged with felony reckless conduct for driving his 2006 "Hummer on Parade Road at excessive speed and passing other motorists while failing to obey the rules of the road." See RSA 631:3.

The jury found him guilty of both charges alleging that he had disobeyed an officer. The jury acquitted the defendant of felony reckless conduct, but convicted him of the lesser included offense of misdemeanor reckless conduct.

2

After he was convicted, the defendant filed a motion for judgment notwithstanding the verdict (JNOV) on the Mailloux charge. The State moved to dismiss the defendant's motion because, only days after filing it, he filed this appeal. The defendant did not object to the State's motion. Accordingly, the trial court dismissed the defendant's motion for JNOV. The defendant did not move for reconsideration of that dismissal.

## II. Discussion

### A. Mistrial

On appeal, the defendant first argues that the trial court erred by not declaring a mistrial after the prosecutor, in her opening statement, asserted that Mailloux would testify "that as soon as he made contact with the defendant, the defendant said what's going on, that wasn't me. . . . He also said, I saw the blue lights and I pulled over. . . . And he said something to the effect of it wasn't me, if I get into trouble[,] I could go to jail."

The State correctly contends that the defendant did not preserve this argument for the court's review. "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." State v. Russo, 140 N.H. 751, 753 (1996) (quotation omitted). To afford the trial court an opportunity to correct an error it may have made, we require that an objection state explicitly the specific ground of objection. Id. The defendant failed to meet these requirements: although he objected generally to the prosecutor's statement, he never moved for a mistrial. See id. Nor did the defendant ever argue to the trial court that the court erred by failing to declare a mistrial sua sponte. Under these circumstances, we decline to consider the merits of the defendant's mistrial argument. See id.

### B. Mailloux Charge

The defendant next argues that, to convict him of disobeying an officer by increasing his speed so as to elude Mailloux's pursuit, the State had to prove that Mailloux used his emergency lights or siren when the defendant increased his speed. As the State correctly observes, the defendant also did not preserve this argument for our review.

The jury was not instructed that it had to find that the defendant eluded pursuit by increasing his speed when Mailloux was using his emergency lights or siren, and the record does not demonstrate that the defendant ever objected to the jury instruction. The defendant did raise this argument in his post-conviction motion for JNOV. However, the trial court dismissed that motion without objection from the defendant, and, thus, never considered his argument substantively.

3

The defendant next argues that the evidence was insufficient to convict him of the Mailloux charge. When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Francis, 167 N.H. 598, 604 (2015). When the evidence as to one or more elements of the charged offense is solely circumstantial, the defendant must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. "Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo." State v. Kay, 162 N.H. 237, 243 (2011). In this case, we review the entire record to determine whether the evidence was sufficient because the defendant chose to present a case after unsuccessfully moving to dismiss. See State v. Cunningham, 159 N.H. 103, 107 (2009).

The defendant asserts that the evidence was insufficient to convict him of the Mailloux charge because Mailloux "failed to identify the defendant as being the person that allegedly failed to stop for him and who he later detained." He contends that, although Armstrong identified the defendant in court, Armstrong's identification "does not satisfy the Due Process requirement that . . . Mailloux identify [him] as being the person that eluded him."

The defendant's due process argument is not preserved for our review. Although the defendant raised that argument in his motion for JNOV, as previously discussed, his motion was dismissed, and he did not object to its dismissal. Because the defendant's due process argument is not preserved for our review, we consider only whether the evidence was sufficient for the jury to have found, beyond a reasonable doubt, that the defendant was the person who attempted to elude his pursuit by increasing speed.

Armstrong identified the defendant in court as "Mr. DeBoer." Armstrong testified that he had heard that Mailloux stopped "Mr. DeBoer." Armstrong further testified that he booked and interviewed "Mr. DeBoer" at the police station. On cross-examination, Mailloux agreed that "Mr. DeBoer," whom defense counsel identified as the operator of the SUV, had cooperated with Mailloux at the motor-vehicle stop. Moreover, the defendant identified himself as "Joshua James DeBoer." He testified that he owns a 2006 "Hummer H3," that he remembered passing a police cruiser on Weirs Boulevard at approximately 1:00 a.m., that he was "going a little bit faster than the speed limit" when he passed the cruiser, that he traveled down Union Avenue and then turned onto Elm Street without making "a complete stop" at the intersection, that he saw another cruiser as he traveled on Elm Street, that he then turned his vehicle onto Parade Road and was then "probably going a ways over the speed limit," that when he approached the "corner of Livingston, Pease Road, and Parade Road," he saw an officer following him with the cruiser's

4

"blue lights" activated, and that he stopped his vehicle, and that he was then arrested. Viewing this evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that the defendant was the person who attempted to elude Mailloux's pursuit by increasing his speed.

### C. Armstrong "Disobeying an Officer" Charge

The defendant contends that the evidence was insufficient to convict him of the Armstrong charge because there was no evidence that Armstrong "ma[de] contact with any person (nor did he ever have a description of any driver)" and because Armstrong did not identify the defendant in court "until after the defendant [was] arrested by . . . Mailloux." We construe the defendant's argument as a challenge to the sufficiency of the evidence that he was the driver who failed to stop when Armstrong signaled him to do so by using his emergency warning signals. To the extent that the defendant argues that the evidence was insufficient to convict him of the Armstrong charge for some other reason, he has failed to brief that argument sufficiently for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003).

As discussed above, Armstrong identified the defendant in court as "Mr. DeBoer," and the defendant identified himself as "Joshua James DeBoer." Armstrong also testified that he wrote "Mr. DeBoer a ticket for neglecting and failing to stop" at the intersection of Union Avenue and Elm Street, and that he handed the ticket to "Mr. DeBoer" in the booking room. Viewing this evidence and reasonable inferences therefrom in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that the defendant was the person who failed to stop when Armstrong signaled him to do so by using his emergency warning signals.

### D. Reckless Conduct Charge

The defendant also argues that the evidence was insufficient to convict him of misdemeanor reckless conduct. He concedes that there was evidence that he drove at an excessive speed, failed to stop for a police officer, and passed another vehicle unsafely, but contends that this evidence was insufficient to establish that he engaged in reckless conduct. See RSA 631:3, I (providing that "[a] person is guilty of reckless conduct if he recklessly engages in conduct which places or may place another in danger of serious bodily injury"). He asserts that "[t]he evidence in this case of speeding and unsafe passing simply do not rise to the level of placing another in danger of serious bodily injury."

Mailloux testified that the defendant was traveling in a residential area at more than 100 miles per hour and that he crossed a double yellow line to pass a vehicle. Armstrong testified that he saw the defendant's SUV turn right at

5

the intersection of Elm Street and Union Avenue without using his directional signals or brakes.  Armstrong testified that this intersection is "very dangerous" because of pedestrian traffic, "even at 1 or 2 in the morning."  The defendant conceded that he was traveling in a residential area, that he "was probably going a ways over the speed limit," that on Parade Road "there are some really sweeping corners that are rather dangerous," that there are frequent car accidents on Parade Road, and that he could have caused death or serious bodily injury "at 30 miles per hour."  Viewing this evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the defendant engaged in reckless conduct.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**