Hillsborough-northern judicial district
No. 2010-115

THE STATE OF NEW HAMPSHIRE

v.

ANTHONY KAY

Argued: May 12, 2011
Opinion Issued: July 21, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Dorothy E. Graham*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. The defendant, Anthony Kay, appeals the decision of the Superior Court (*Abramson*, J.) finding that he violated his probation and imposing a sentence of imprisonment. He argues that the trial court: (1) committed plain error by finding that he violated probation conditions that were never imposed by the sentencing court; and (2) erred in finding a violation of probation based upon his failure to pay child support as ordered because any such failure was due to financial hardship. We affirm.

On January 9, 2008, the defendant pleaded guilty to two felony counts of failure to pay child support. *See* RSA 639:4 (2007). At the time of sentencing, he owed a total of nearly $70,000 in two separate support cases. The Superior Court (*O'Neill*, J.) sentenced him to two concurrent terms of two to five years at the state prison, deferred for ten years, and placed him on probation through the New Hampshire Department of Health and Human Services (DHHS). *See* RSA 161:8 (2002). The sentencing order read, in relevant part:

> The defendant is placed on probation for a period of 5 year(s), through DHHS. Effective: Forthwith. The defendant is ordered to call immediately to DHHS, Wayne Jeffrey. Violation of probation or any of the terms of this sentence may result in revocation of probation and imposition of any sentence within the legal limits for the underlying offense. The following conditions of this sentence are applicable whether incarceration is suspended, deferred or imposed or whether there is no incarceration ordered at

all. Failure to comply with these conditions may result in the imposition of any suspended or deferred sentence. Under the direction of the Probation/Parole Officer, the defendant shall tour the New Hampshire State Prison. The defendant & the State have waived sentence review in writing or on the record. The defendant is ordered to be of good behavior and comply with all the terms of this sentence. Probation shall be under the direction of the Dept of Health and Human Services, child support services. Probation shall be for the purposes of collection of child support payments only.

At their subsequent meeting, Jeffrey instructed the defendant to make total payments of $91.65 per week for the two cases, including payments for arrearage, and informed him where those payments were to be made. While he was employed, the defendant was to make payments through a wage assignment and he was to make direct payments until such wage assignment had gone into effect. Jeffrey also instructed the defendant to maintain weekly contact with his office and inform him of any change in his employment status or residence.

Beginning in January, the defendant worked at Sterling Linen for about thirty days and began making support payments by wage assignment. In February, his employment at Sterling Linen ended, and he remained unemployed until June, when he began working at Fletcher Sandblasting and resumed payments by wage assignment. The defendant was fired from Fletcher Sandblasting after thirty to forty days of employment, and soon thereafter became homeless. The defendant admits that he stopped reporting to his probation officer after becoming unemployed, and that he never sought to modify his support payments at any time.

On August 22, 2008, Jeffrey reported to the court that the defendant violated the terms of his probation by failing to make weekly support payments pursuant to the trial court order and Superior Court Rule 107(b), and by failing to maintain weekly contact with his office as directed pursuant to Superior Court Rule 107(a). From the time of his plea hearing in January until the probation violation report was filed in August, the defendant made a total of $406.54 in support payments. After conducting a probation violation hearing, the superior court found that the State had met its burden of proving the charged probation violations. On December 1, 2009, the court sentenced the defendant to three-and-one-half to seven years in the New Hampshire State Prison. This appeal followed.

The defendant first argues that the trial court erred when it found he had violated probation conditions that he regularly report to his probation officer and adhere to a weekly payment schedule because such conditions

were never imposed by the original sentencing court. Thus, he contends, the trial court erroneously modified the conditions of his sentence in violation of his right to due process under the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. We first examine the defendant's arguments under the State Constitution, using federal cases for guidance only. *State v. Ball*, 124 N.H. 226, 232-33 (1983).

The defendant acknowledges that he failed to raise this issue before the trial court, and asks that we review the trial court's decision for plain error. Supreme Court Rule 16-A allows us to exercise our discretion to consider plain errors not raised in the trial court. *State v. Sideris*, 157 N.H. 258, 264 (2008). However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.* Here, we find no error at all.

■ The court may sentence a person convicted of a felony to probation "if the court finds that such person is in need of the supervision and guidance that the probation service can provide under such conditions as the court may impose." RSA 651:2, V(a) (2007). RSA 504-A:12 (2010) delineates the powers and duties of probation and parole officers, including, in part:

> II. To take charge of and to provide supervision to persons placed on probation, parole, or lifetime supervision, attempting to assist them in establishing law-abiding lives while monitoring their behavior through office, home, work, and other contacts to insure that they comply with their probation, parole, or lifetime supervision conditions.

> III. To report promptly to the appropriate court or the parole board violations of probation or parole conditions which are required by statute, the parole board, or the court or which, in the opinion of the officer, are serious enough to warrant consideration by the authority authorizing probation or parole. Such reports shall include recommendations as to any actions which the officer believes to be appropriate.

■ "If appointed by a court of competent jurisdiction, the commissioner of the department of health and human services shall perform, under the supervision of such court, the function of probation officer or agent of the court in any welfare matters which may be before the court." RSA 161:8 (2002). "Probation conditions" are those "restrictions and limitations established by the court for the conduct and behavior of a probationer."

RSA 504-A:1, VII (2010). Superior Court Rule 107 sets forth the standard terms and conditions of probation, reading in part:

> The terms and conditions of probation, unless otherwise prescribed, shall be as follows:
>
> The probationer shall:
>
>> (a) Report to the probation or parole officer at such times and places as directed, comply with the probation or parole officer's instructions, and respond truthfully to all inquiries from the probation or parole officer;
>>
>> (b) Comply with all orders of the Court, board of parole or probation or parole officer, including any order for the payment of money;
>>
>> (c) Obtain the probation or parole officer's permission before changing residence or employment or traveling out of State;
>>
>> . . . .
>>
>> (e) Diligently seek and maintain lawful employment, notify probationer's employer of his or her legal status, and support dependents to the best of his or her ability; . . . .

The defendant contends that the original sentencing court limited the terms of his probation to the collection of child support payments, his completion of a state prison tour, and his immediate contact with his probation officer. He does not challenge the terms of payment and regular contact set by his probation officer as unreasonable, but rather argues that the terms of his probation had been established by the sentencing court and could not be further amended or supplemented. According to the defendant, because the sentencing court "did not order [him] to comply with the usual terms of probation or any special terms imposed by probation" under Superior Court Rule 107, did not "expressly delegate to the probation department the authority to impose additional obligations," and "did not order a certain amount of restitution, a specific payment schedule, or weekly contact with probation," the trial court lacked authority to find that he violated his probation for failing to provide support payments and maintain contact with DHHS in the manner established by his probation officer. We disagree.

■■ The sentencing court must make clear at the time of sentencing in plain and certain terms what punishment it is exacting as well as the extent to which it retains discretion to impose punishment at a later date and under what conditions the sentence may be modified. *State v. Hancock*, 156 N.H. 301, 305 (2007). When the deprivation of a defendant's conditional liberty rests upon the commission of a non-criminal act, he must be given some warning in order to ensure that he understands, in plain and certain terms, the conditions of his sentence. *State v. Budgett*, 146 N.H. 135, 138 (2001). Due process mandates that a defendant be given actual notice that such conduct could result in the revocation of his conditional liberty. *Id.* at 138-39. To hold otherwise would effectively modify the terms of the original sentencing order and result in fundamental unfairness. *Id.* at 139. However, some terms of probation are implied by the imposition of probation itself and need not be explicitly stated to give fair warning to the probationer, such as that if the probationer commits a crime, he will lose the privilege of his conditional liberty. *See id.* at 138. Our interpretation of a trial court order is a question of law, which we review *de novo*. *See State v. Parker*, 155 N.H. 89, 91-92 (2007).

The defendant relies on *State v. Merrill*, 160 N.H. 467 (2010), to support his argument that his due process rights were violated because the conditions of his probation that he was found to have violated were not set forth in the sentencing order. In *Merrill*, we held that because the trial court sentenced the defendant to probation "upon the usual terms of probation and any special terms of probation determined by the probation officer," the defendant was aware at the time of sentencing that he was to abide by the conditions of probation established by his probation officer, and therefore his due process rights were not violated. *Merrill*, 160 N.H. at 473 (quotation and brackets omitted). Contrary to the defendant's implication, however, we did not hold that to provide adequate notice the sentencing court must explicitly state each and every detail of the manner in which probation conditions are to be implemented.

■ Here, the sentencing order plainly imposed an obligation on the defendant to pay child support and informed him that compliance was to occur through Jeffrey, his probation officer. Implicit in these conditions was authority for Jeffrey to establish the amount of periodic payments and to require the defendant to remain in contact with him, and the defendant could not reasonably have understood otherwise. Indeed, Jeffrey could not have enforced the court's order in the absence of imposing such requirements. Even if we were to assume that the language of the sentencing order limiting the purpose of probation to the "collection of child support payments only" excluded the standard terms of Superior Court Rule 107

*unrelated* to collection of the defendant's child support payments, we conclude that the order gave sufficient notice to the defendant that Jeffrey had the authority to establish reasonable terms necessary to ensure and supervise the collection of child support payments, including setting a payment schedule and a regular reporting requirement to monitor the defendant's compliance. *See id.*

██ We find no error in the trial court's ruling that the defendant violated the terms of his probation. Accordingly, there was no plain error, and the defendant's due process claim fails. The Federal Constitution affords the defendant no greater protection than does the State Constitution under these circumstances. *Id.* at 474. We thus reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that the trial court erred in finding that the State presented sufficient evidence to warrant a finding that he violated his probation by failing to pay child support. Specifically, he contends that any failure to pay was due to financial hardship while he was unemployed, and that he made bona fide efforts to fulfill his support payment obligation by making child support payments by wage assignment when he was working.

The State responds that, even limiting the scope of the issue to the periods when the defendant was employed, he still failed to meet his payment obligation. From the time of his plea hearing in January until the probation violation report was filed in August, the defendant made a total of $406.54 in support payments, all by wage assignment and all during the sixty to seventy days in that period that he was employed. The State calculates that, for the sixty to seventy days that he was employed, the defendant's total support obligation was between $779.02 and $916.50.\* Thus, the State argues, the defendant failed to pay between $372.48 and $509.96 of his weekly support obligation, in spite of being employed and able to pay.

Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is *de novo. See State v. Spinale*, 156 N.H. 456, 463-64 (2007) ("sufficiency of the evidence . . . is a term of art meaning that legal standard which is applied to determine . . . whether the evidence is legally sufficient to support the jury verdict as a matter of law" (quotation omitted)); *State v. Lake Winnipesaukee Resort*, 159 N.H. 42, 45 (2009) (matters of law are reviewed *de novo* on appeal). We acknowledge that there is language in *State v. Dumont* which can be interpreted to suggest that the standard of review for sufficiency of the evidence is an

---

\* The State calculated these totals by multiplying the defendant's weekly support obligation ($91.65) by the number of weeks between January and August 2008 that he worked (eight-and-one-half to ten).

unsustainable exercise of discretion. *See State v. Dumont*, 145 N.H. 240, 244 (2000) ("We give deference to a trial court's decision in probation revocation proceedings and reverse only where there has been an abuse of discretion." (quotation omitted)). While an unsustainable exercise of discretion is the correct standard for reviewing a trial court's discretionary decision as to the appropriate sanction to be imposed *once a probation violation has been found*, to avoid future confusion we now clarify that we consider challenges to the sufficiency of the evidence to support a finding that probation was violated under a *de novo* standard of review.

■ Probation may be revoked, consistent with due process, upon proof by a preponderance of the evidence that the defendant has violated the terms of his freedom. *Dumont*, 145 N.H. at 243. In order to prevail on appeal, the defendant must show that the evidence, viewed in the light most favorable to the State, fails to support the trial court's decision. *Id.* at 244. Where, as here, the State shows that the defendant did not meet a condition of his sentence by failing to make a required payment, the court then must inquire into the reasons for the failure to pay. *State v. Fowlie*, 138 N.H. 234, 237 (1994). When the probationer raises inability to pay as a defense to a probation violation, he bears the burden to demonstrate sufficient bona fide efforts to meet his obligation, including the diligence exercised in those efforts. *Dumont*, 145 N.H. at 244. If a probationer sentenced to make periodic payments has willfully refused to pay when he had the means to do so, he may be imprisoned. *Fowlie*, 138 N.H. at 236. The court also may revoke probation if a probationer does not make sufficient bona fide efforts to seek employment or borrow money in order to pay his obligation. *Id.*

The record shows that the defendant worked at Sterling Linen for about thirty days in January 2008 and at Fletcher Sandblasting for thirty to forty days in June 2008. He made child support payments by wage assignment during these two periods of employment, and made no other payments. There was disputed evidence as to how the defendant's employment at Sterling Linen ended. The defendant claimed that after injuring his back and being denied workers' compensation benefits, he was told to quit or he would be fired; Jeffrey testified that when he contacted Sterling Linen to verify that claim, he was told that the defendant had quit. As for the defendant's employment at Fletcher Sandblasting, he testified that he was fired because he lacked transportation, and that he eventually became homeless. The defendant testified that he left Jeffrey a voice mail informing him of this change in his employment status, but, according to Jeffrey, he had no direct contact with the defendant after June 3, and the defendant's last support payment was received on June 26.

The defendant contends that he made bona fide efforts to fulfill his support obligations. However, he failed to meet his burden to show why he failed to make the required payments while employed. He paid $406.54 by wage assignment, but failed to make any other payments, even though he had been specifically instructed to do so by his probation officer at the outset of his probation and even though he was employed and had the ability to make additional support payments while he was employed. *See Dumont*, 145 N.H. at 244-45. In addition, viewed in the light most favorable to the State, the evidence was sufficient for the trial court to have found that the defendant quit his job at Sterling Linen, creating his own financial hardship in the face of owing almost $70,000 in arrearage. If a defendant must make sufficient bona fide efforts to seek employment in order to pay his financial obligation, *see Fowlie*, 138 N.H. at 236, it follows that he must make sufficient bona fide efforts to maintain employment for the same reason. *Cf.* RSA 458-C:2, IV(a) (2004) (where parent is found to be voluntarily unemployed, trial court may consider as gross income, for purposes of setting support payments, the difference between amount parent is earning and amount parent has earned).

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.