NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

2nd Circuit Court-Lebanon District Division
No. 2019-0539

THE STATE OF NEW HAMPSHIRE

v.

BRYAN WESTON LUIKART

Argued: September 24, 2020
Opinion Issued: May 4, 2021

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the memorandum of law and orally), for the State.

Simpson & Mulligan, P.L.L.C., of Lebanon (Gary Apfel, on the brief and orally), for the defendant.

HANTZ MARCONI, J. The defendant, Bryan Weston Luikart, appeals an order of the Circuit Court (Bamberger, J.) imposing a portion of his suspended sentence. The defendant argues the trial court erred in finding that the State met its burden of proving that he violated the good behavior condition of his suspended sentence by committing witness tampering. See RSA 641:5, I(b) (2016). We reverse.

I

The pertinent facts before the trial court and the procedural posture of the case, established by the record from the motion hearing, are as follows.[1] See State v. Smith, 163 N.H. 13, 18 (2011) (explaining "the trial court must independently evaluate the evidence before it" to impose a suspended sentence (quotation and brackets omitted)); State v. Gibbs, 157 N.H. 538, 539, 542 (2008). On February 5, 2018, the defendant pled guilty to various charges and was sentenced to 90 days' incarceration, suspended for a period of two years. Conditions on the defendant's suspended sentence included that the defendant "complete [a] batterer's intervention program and be of good behavior."

Following his sentencing, the defendant enrolled in his first batterer's intervention program, but his participation in the program ended on January 24, 2019, for reasons irrelevant to this appeal. As a result of the defendant's departure from the program, the State moved to impose the defendant's suspended sentence on February 8. The defendant then enrolled in a second batterer's intervention program on February 19, and the State withdrew its motion to impose on February 28.

Three days later, on March 3, the defendant sent the following e-mail to his ex-wife: "If you want to be on friendly communicating terms for the best interest of [our child] you might want to consider not trying to trigger the suspended sentence and not trying to continue hurting me. You are the abuser." On March 7, the State filed a new motion to impose the defendant's suspended sentence. A hearing on the State's motion was held on July 23. The State's evidence included the defendant's e-mail, its withdrawn February 8 motion, its March 7 motion, the defendant's suspended sentence, and its offers of proof supporting its argument that the defendant committed witness tampering, see RSA 641:5, I(b), and, consequently, that he violated the good behavior condition of his suspended sentence. The trial court granted the State's motion to impose, finding the evidence before it "sufficient to grant the State's motion, at least generally." The trial court imposed ten days of the defendant's 90-day sentence, with the balance suspended for an additional year. Over the State's objection, the trial court granted the defendant's request for a stay of the imposition pending appeal. The defendant filed a motion to reconsider the trial court's imposition of his suspended sentence, which was denied. This appeal followed.

---

[1] In its memorandum of law, the State references evidence that was not before the trial court when it found that the defendant violated the good behavior condition of his suspended sentence. We do not rely upon evidence not before the trial court to determine whether it erred in so finding. See State v. Gibbs, 157 N.H. 538, 539, 542 (2008).

2

II

The defendant argues that the trial court erred in finding he violated the good behavior condition of his suspended sentence by committing witness tampering, and in doing so characterizes his argument as a challenge to the "sufficiency of the evidence," which is consistent with language used in our prior cases. See, e.g., State v. Benner, 172 N.H. 194, 202 (2019) (deferred-sentence violation); Smith, 163 N.H. at 18 (suspended-sentence violation); State v. Kay, 162 N.H. 237, 243-44 (2011) (probation violation). On appeal, the defendant must show that the evidence, viewed in the light most favorable to the State, fails to support the trial court's decision. Benner, 172 N.H. at 202. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo.[2] Id.; see, e.g., State v. Folley, 172 N.H. 760, 771 (2020) ("Our review of the trial court's legal conclusions is de novo."); State v. Ducharme, 167 N.H. 606, 613 (2015).

"[T]he imposition of a suspended sentence is the remedy for a defendant's noncompliance, not a punishment for the underlying acts," Gibbs, 157 N.H. at 541, and determining whether a defendant has violated a condition of his or her suspended sentence presents a "separate task" from determining whether the defendant may bear criminal liability for the same underlying acts, id. at 542; see State v. Dunn, 164 N.H. 268, 271 (2012) ("A jury acquittal of criminal charges is not dispositive as to whether a suspended sentence should be imposed." (quotation and brackets omitted)). Thus, in the context of considering a motion to impose a defendant's suspended sentence, the trial court must independently evaluate the evidence before it to determine whether the State proved, by a preponderance of the evidence, that violation of the suspension condition occurred. See Smith, 163 N.H. at 18; Gibbs, 157 N.H. at 542.

Accordingly, to prevail on a challenge asserting that the trial court erred in finding a violation of a suspension condition, a defendant must show that the evidence before the trial court on a motion to impose, viewed in the light most favorable to the State, fails to support the trial court's decision that the State met its burden to prove, by a preponderance of the evidence, that a violation of a condition of the suspended sentence occurred. See Kay, 162 N.H. at 243-45; Benner, 172 N.H. at 202; see also Smith, 163 N.H. at 18; Gibbs, 157 N.H. at 540, 542.

---

[2] In Kay, we distinguished our review of whether the evidence was sufficient to establish that a violation occurred, which we review under a de novo standard, from our review of the trial court's decision regarding the appropriate sanction to be imposed after a violation has been found, which we review for an unsustainable exercise of discretion. See Kay, 162 N.H. at 244 (probation violation case). The State, for its part, does not dispute that we should be reviewing the sufficiency of the evidence to support the trial court's finding of a good behavior violation under a de novo standard.

Here, we conclude that, even when viewed in the light most favorable to the State, the evidence adduced at the motion hearing fails to establish, by a preponderance of the evidence, that the defendant committed witness tampering.  See RSA 641:5, I(b).  Witness tampering was the only theory advanced by the State in support of its March 7 motion alleging that the defendant violated his condition to be of good behavior, and we do not interpret the trial court's ruling as having independently found, from the evidence before it, that the defendant's behavior amounted to another type of criminal conduct which violated the good behavior condition.[3]  See Smith, 163 N.H. at 18; Gibbs, 157 N.H. at 542; see also Kay, 162 N.H. at 242 ("Our interpretation of a trial court order is a question of law, which we review de novo.").  Because the evidence does not support the trial court's decision that the defendant violated his condition to be of good behavior, we conclude that the trial court erred in granting the State's motion to impose his suspended sentence.  See Kay, 162 N.H. at 244.

"[G]ood behavior" means "conduct conforming to the law."  State v. Auger, 147 N.H. 752, 753 (2002) (quotation omitted).  To impose a suspended sentence on the ground that the defendant has violated a condition of good behavior, a trial court must find that "the defendant engaged in criminal conduct."  Id. at 753-54 (concluding that "trial court may not impose the defendant's suspended sentences upon proof that he committed a violation-level offense" because a violation does not constitute a crime).  However, proof of a criminal conviction is not necessary to prove a good behavior violation because the State's burden to prove a violation of a suspended sentence is by a preponderance of the evidence; it need not "establish criminal liability" beyond a reasonable doubt.  Stapleford v. Perrin, 122 N.H. 1083, 1089 (1982); see Gibbs, 157 N.H. at 540, 542 (distinguishing the "separate task[s]" of a jury determination of whether evidence established the defendant committed the alleged crimes beyond a reasonable doubt, and a trial court's evaluation of whether the evidence established a violation of the suspension conditions by a preponderance of the evidence).

The defendant was not convicted of, or charged with, witness tampering. In the absence of a criminal conviction for the acts that allegedly constitute the good behavior violation, the State can satisfy its burden by proving "the commission of the underlying acts."  Gibbs, 157 N.H. at 540 (quotation omitted); see Moody v. Cunningham, 127 N.H. 550, 553-54 (1986) (holding evidence of criminal indictment was insufficient, standing alone, to justify imposing suspended sentence because "[i]n the absence of a criminal

---

[3] Although the trial court noted that it found "the language in [the defendant's] email to be threatening," we do not understand the trial court to have independently determined that the evidence before it demonstrated that the defendant violated his condition to be of good behavior by engaging in any criminal conduct other than the State's sole claim of witness tampering.  See Smith, 163 N.H. at 18; see also Gibbs, 157 N.H. at 542; Kay, 162 N.H. at 242.

conviction, the fact-finder must make an independent determination that the defendant committed the alleged violations").

Although the State need not "establish criminal liability" to prove a good behavior violation, Stapleford, 122 N.H. at 1089, the State must still establish that the defendant engaged in criminal conduct, i.e., conduct not in conformance with the law, Auger, 147 N.H. at 753-54. Thus, the court must look to the law as articulated to determine whether the defendant's behavior was not in conformity therewith. See, e.g., id. (looking to RSA 265:81-a (1993) to evaluate the conduct allegedly supporting the State's motion to impose and concluding the defendant's conduct amounted to only a violation-level offense per the statute); Gibbs, 157 N.H. at 542 (concluding that the trial court's determination that defendant violated a condition of his suspended sentence was "properly premised solely upon the evidence adduced at [his criminal] trial," despite defendant being acquitted, given the lesser burden of proof on a motion to impose).

To the extent our prior case law on this issue is unclear, we take this opportunity to clarify that in order to prove a violation of good behavior in the absence of a criminal conviction, the State has the burden to prove the essential elements of the criminal conduct that amounts to the alleged good behavior violation, and must do so by a preponderance of the evidence. See Gibbs, 157 N.H. at 542 ("[T]he motion to impose is a separate proceeding [from a criminal prosecution], with a different, lesser, burden of proof.").

III

Here, the State argued that the defendant violated the good behavior condition of his suspended sentence by committing witness tampering, and the trial court granted the State's motion to impose. See RSA 641:5, I(b). Pursuant to the relevant provisions of New Hampshire's witness tampering statute, a person has committed witness tampering if, "[b]elieving that an official proceeding . . . or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to . . . [w]ithhold any testimony, information, document or thing." Id.; see RSA 641:1, II (2016) (defining "official proceeding").

On appeal, the defendant argues: (1) the belief of the "mere possibility" that a motion to impose a suspended sentence could be brought is inadequate to satisfy the mens rea element of RSA 641:5 as a matter of law; (2) the State failed to prove the defendant believed an official proceeding or investigation was pending or about to be instituted; and (3) the State failed to prove the defendant attempted to induce his ex-wife to "[w]ithhold any testimony, information, document or thing." RSA 641:5, I(b); see RSA 641:5, I (2016).

5

The defendant's first argument raises an issue of statutory interpretation. The interpretation of a statute presents a question of law, which we review de novo. See State v. Thiel, 160 N.H. 462, 465 (2010). In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. See id. "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice." Id. (quotation omitted); see RSA 625:3 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Thiel, 160 N.H. at 465.

The defendant's argument centers on the proper interpretation of the mens rea element of the New Hampshire witness tampering statute, which requires a "[b]elie[f] that an official proceeding . . . or investigation is pending or about to be instituted." RSA 641:5, I. The defendant argues that evidence showing his belief of the "mere possibility" that a motion to impose his suspended sentence could be brought is inadequate to satisfy the mens rea element of RSA 641:5 because the phrase "about to be instituted" requires that the actor "believe not only that a proceeding or investigation is possible; he must also believe that it is probable." "Said another way," the defendant contends, "the statute requires imminence." As support for his argument, the defendant relies upon the commentary to the Model Penal Code.

RSA 641:5, like much of our Criminal Code, is derived from the Model Penal Code. See, e.g., State v. Formella, 158 N.H. 114, 117 (2008); see also Commission to Recommend Codification of Criminal Laws, Report of Commission to Recommend Codification of Criminal Laws § 586:5 at 91 (1969). "Accordingly, we look to the Model Penal Code and its commentaries for guidance" when interpreting analogous New Hampshire statutes. Formella, 158 N.H. at 117. RSA 641:5 is substantially derived from section 241.6 of the Model Penal Code. See RSA 641:5, I; Model Penal Code & Commentaries § 241.6(1), at 162-63 (1985); cf. State v. Kilgus, 125 N.H. 739, 743 (1984) ("[T]he New Hampshire Legislature excluded the terms 'witness' and 'informant' used in the Model Penal Code provision on witness tampering, and instead used the broader term 'person.'"). Like our witness tampering statute, the Model Penal Code requires the "belie[f] that an official proceeding or investigation is pending or about to be instituted." Model Penal Code & Commentaries § 241.6(1), at 162; see RSA 641:5, I. Comment 2 to section 241.6(1) explains the drafters' intent behind the use of this language. See Model Penal Code & Commentaries § 241.6 cmt. 2, at 166-67.

According to the drafters of the Model Penal Code, the model was worded "to eliminate the purposeless quibbling invited by laws requiring that a proceeding or investigation actually be pending or in fact be contemplated by the authorities." Id. at 166. Thus, "[t]he prosecution must establish that the defendant held the specified belief but need not prove that a proceeding or

6

investigation was in fact pending or about to be instituted." Id. at 166-67. Under the Model Penal Code, "[i]n assessing such belief, the word 'about' as it appears in [section 241.6(1)] should be construed more in the sense of probability than of temporal relation" because "[w]hat is important is not that the actor believe that an official proceeding or investigation will begin within a certain span of time but rather that he recognize that his conduct threatens obstruction of justice." Id. at 167.

We likewise conclude that the legislature intended the phrase "about to be instituted" in RSA 641:5, I, to be understood more in the sense of probability than of temporal relation. RSA 641:5, I; see Model Penal Code & Commentaries § 241.6 cmt. 2, at 166-67. Therefore, to the extent the defendant argues, by equating the concepts of "probability" and "imminence," that RSA 641:5, I, requires the belief that the institution of an official proceeding or investigation was probable — and also the belief that it "will begin within a certain span of time" — we disagree. We conclude that the legislature, like the drafters of the Model Penal Code, intended to distinguish the considerations of probability and temporal relation, and emphasize the import of the former over the latter. See RSA 641:5, I; Model Penal Code & Commentaries § 241.6 cmt. 2, at 166-67. Nevertheless, given our interpretation of the phrase "about to be instituted" in RSA 641:5, I, we agree with the defendant that evidence demonstrating a belief in the "mere possibility" that a motion to impose could be brought is inadequate as a matter of law to satisfy the mens rea element of witness tampering.

We next turn to the defendant's second argument, that the State failed to prove he believed an official proceeding or investigation was pending or about to be instituted. At the hearing, the State's evidence included its February 8 motion to impose and the facts surrounding its withdrawal, the defendant's March 3 e-mail, the fact that the defendant was under a suspended sentence, and its March 7 motion. The State argued that even though the February 8 motion had been withdrawn, because the defendant was "under a suspended sentence" when he sent the e-mail, "there was a possibility for a motion to be filed at any moment for any other reason that would have been a justified reason to file one." According to the State, the defendant "still blamed" his ex-wife for the State's first motion to impose and "[i]f it was true that [the] defendant believed that the [ex-wife] could 'trigger' his suspended sentence, he clearly understood that proceedings could be imminent if he failed to satisfy the terms of his suspended sentence." And thus, the State contends, the defendant's e-mail served as a "request that [his ex-wife] remain silent about future infractions."

Even when viewed in the light most favorable to the State, the evidence before the trial court shows only the defendant's belief of the "mere possibility" of an official proceeding or investigation being instituted, not the defendant's belief that either was probable. There was evidence showing that the defendant

7

understood the nature of what it means to be subject to a suspended sentence — as the State articulates, that the defendant "clearly understood that proceedings could be imminent if he failed to satisfy the terms of his suspended sentence" — and that he believed that his ex-wife "could 'trigger'" a motion to impose by reporting information to the prosecution, as he believed she had done once already. There was also evidence showing that the defendant's belief that his ex-wife could trigger another motion to impose prompted his March 3 e-mail, stating, "If you want to be on friendly communicating terms for the best interest of [our child] you might want to consider not trying to trigger the suspended sentence and not trying to continue hurting me. You are the abuser." However, the defendant's implied "request that [his ex-wife] remain silent about future infractions," simply does not show that the defendant believed the institution of an official proceeding or investigation was probable, or was pending.

Consequently, we hold that the evidence before the trial court does not support a finding that the defendant believed an official proceeding or investigation was pending or about to be instituted when he sent the March 3 e-mail, when the evidence is viewed in the light most favorable to the State. See RSA 641:5, I. As a result of this conclusion, we need not address the defendant's other arguments on appeal.

IV

In sum, we conclude that evidence showing that the defendant believed there was a "mere possibility" for the institution of an official proceeding or investigation does not satisfy the mens rea element of RSA 641:5, I, as a matter of law. See id. We also conclude that the evidence adduced at the motion hearing, viewed in a light most favorable to the State, fails to support, by a preponderance of the evidence, the conclusion that the defendant believed an official proceeding or investigation was pending or about to be instituted. See id. Accordingly, because the State failed to prove the essential elements of witness tampering by a preponderance of the evidence, it advanced no other argument as to why the defendant violated the good behavior condition of his suspended sentence, and we do not understand the trial court to have found that the defendant engaged in any other type of criminal conduct which violated the good behavior condition, the State failed to meet its burden of proving that the defendant violated the good behavior condition of his suspended sentence. Therefore, the trial court erred when it granted the State's motion, and we reverse the court's order imposing a portion of the defendant's suspended sentence.

Reversed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.