# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0410, In the Matter of Steven Vallier and Susan Vallier, the court on August 17, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The petitioner, Steven Vallier, appeals an order of the Circuit Court (Rauseo, J.) establishing the fair market value of a second home that he owns jointly with the respondent, Susan Vallier. The petitioner argues that: (1) the trial court erred as a matter of law by adopting its own valuation method contrary to the opinion of both experts; and (2) the record does not support the trial court's valuation of the subject property. We affirm.

The following facts are undisputed or are otherwise supported by the record. In 2014, the trial court issued a final order on the parties' petition for divorce. The following month, the court amended the final divorce decree and ordered the parties to sell the jointly-owned vacation home located in New Durham (the subject property). The subject property, however, was never placed on the market. In 2020, the court approved an agreement to modify the alimony order, which referenced the subject property. At that time, the parties agreed to sell the subject property within a year at a price not below fair market value and to divide the net proceeds equally. Once again, however, the subject property was not placed on the market. In 2021, the petitioner filed a petition requesting that the court allow him to buy out the respondent's interest in the subject property at fair market value. In January 2022, following a hearing, the court found that the petitioner's request would not constitute a modification of the property division and permitted the petitioner to buy out the respondent's interest in the subject property based upon its fair market value. The court ordered the parties to obtain appraisals from certified appraisers and rescheduled the matter for a hearing.

In April 2022, the court held a hearing to determine, in part, the fair market value of the subject property. At the hearing, each party presented testimony from their expert appraiser and provided an accompanying appraisal report. Peter Stanhope, the petitioner's appraiser, testified that in August 2021, he appraised the subject property at $295,000 using the comparative sales method. He compared the subject property with three comparable properties to reach this value. Russell Wakefield, the respondent's appraiser,

testified that he also utilized the comparative sales method and appraised the subject property at $300,000. To determine the value, he compared the subject property with six comparable properties, including the sale of a property located at 177 South Shore Road, which sold eight days prior to the hearing, "had a lot of similarities" to the subject property, and thus "was an important sale." Both experts testified that the appraised value of a home may be different from the potential sale price if the property is placed on the open market.

In June, the court issued an order in which it assessed the value of the subject property at $450,000. The court found that the Stanhope appraisal is "not indicative of fair market value and is unreliable." The court noted that Stanhope's appraised value of the subject property was from August 2021 — eight months prior to the April 2022 date of valuation that the court used. Accordingly, Stanhope did not consider existing market conditions or the sale of the 177 South Shore Road property that occurred eight days prior to the hearing. The court also found that the three comparable properties that Stanhope used in his appraisal were "unreliable in as much as they went under [contract] a year or more prior to the date of evaluation for the subject property" and the appraiser "did not adjust the value for the difference between the sale and the time of valuation of the parties' property." The court also found that Stanhope's treatment of a comparable property located at 79 South Shore Road was "excessive and unreliable."

Regarding the Wakefield appraisal, the court found that although this appraisal "used more recent sales in its evaluation," it was nevertheless "partially unreliable to the extent it improperly weighed the comparable properties in reaching its conclusion." Regarding the comparable property located at 177 South Shore Road, which sold eight days prior to the hearing for $320,000, the court found this property to be inferior to the subject property because it had less acreage, less square footage, fewer bedrooms and bathrooms, and was older than the subject property. The court noted that the Wakefield report, after making adjustments, concluded that the 177 South Shore Road property had an adjusted value[1] of $450,537, and thus found that the sale of the comparable property "supports, after making adjustments, [that] the parties' property has a value of $450,537.00." The court also observed that Wakefield used, as a comparable, the property at 79 South Shore Road, but that unlike Stanhope, he "used reasonable adjustments" and adjusted the sale price for the one-year difference between the sale price of the comparable and

---

[1] The "adjusted sales price" in an appraisal is "the indicated price of a comparable property after adjustments have been made to account for differences between comparable and subject properties." allBusiness, https://www.allbusiness.com/barrons_dictionary/dictionary-adjusted-sales-price-4962117-1.html (last visited August 8, 2023); see also Real Estate Investor's Deskbook § 2:26 (3d ed. 2023), Westlaw REINVESTOR § 2:26.

Wakefield's date of valuation. The court noted that, in the Wakefield report, the adjusted value of the 79 South Shore Road property was $484,190. The court concluded that "[b]ased on the Court's adjustments and refinements to the [Wakefield] valuation analysis, the Court puts the most weight on the comparable property located at 177 South Shore Road" and found the fair market value of the subject property to be $450,000. The petitioner filed a motion for reconsideration, which the court denied. This appeal followed.

The sole issue on appeal is whether the trial court erred in finding the fair market value of the subject property to be $450,000 when the two expert appraisers valued the subject property at $295,000 and $300,000, respectively. The petitioner first argues that the trial court's determination of the fair market value of the subject property "is legally erroneous because the court discounted the well settled methodology each expert used and invented its own unsupported method to value the property." In the alternative, the petitioner argues that, even if the court's method is permissible, there is no evidence to support a fair market value of $450,000. The respondent counters that the trial court sustainably exercised its discretion when it determined the subject property's fair market value and that evidence in the record supports the court's valuation of the property. We agree with the respondent.

"Fair market value is the price a willing buyer and a willing seller would probably arrive at through fair negotiations, taking into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." Rattee v. Rattee, 146 N.H. 44, 50 (2001) (quotation omitted). The determination of fair market value is a question of fact. Ventas Realty Ltd. P'ship v. City of Dover, 172 N.H. 752, 755 (2020). "We have never attempted to tie the fact finder's hands with a rigid fair market value formula in the absence of legislative directive. Rather, judgment is the touchstone." Appeal of Pennichuck Water Works, 160 N.H. 18, 38 (2010) (quotation, brackets, and ellipsis omitted).

We will uphold the trial court's findings of fact unless they lack evidentiary support or are legally erroneous. Ventas Realty Ltd. P'ship, 172 N.H. at 755. We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. The trier of fact "is not compelled to accept the opinion evidence of any one witness or group of witnesses, including expert witnesses." Appeal of Pennichuck Water Works, 160 N.H. at 41. The trier of fact can "accept or reject such portions of the evidence as it [finds] proper, including that of expert witnesses," and is "not required to believe even uncontroverted evidence." Id.

We begin by considering whether there is evidence in the record to support the trial court's valuation of the subject property at $450,000. The trial court considered both experts' reports and found the Wakefield appraisal to be more reliable than the Stanhope appraisal, in part because the Wakefield appraisal valued the subject property more recently than the Stanhope appraisal, and Wakefield used more recent sales in his valuation, including the sale of the 177 South Shore Road property. See Ventas Realty Ltd. P'ship, 172 N.H. at 755 ("[W]e defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence."). In reaching the specific value of $450,000, the court put "the most weight" on the fact that Wakefield's adjusted value for the comparable 177 South Shore Road property was $450,537. The court considered it particularly relevant that the sale of the 177 South Shore Road property, which is located on the same street as the subject property, occurred eight days prior to the hearing. The court also considered Wakefield's adjusted value for the 79 South Shore Road property at $484,190, which it found "supports the reliance of the adjusted value of 177 South Shore Road." Accordingly, we conclude that the trial court properly applied the data from Wakefield's analysis to arrive at its valuation of the subject property.

Having concluded that there is evidence to support the trial court's finding, we next address the petitioner's argument that such finding is legally erroneous because "the court discounted the well settled methodology each expert used and invented its own unsupported method to value property." We disagree with the petitioner's premise that the trial court "invented" an unsupported method to determine the value of the subject property. Rather, trial courts have the discretion to accept or reject, all or portions of, the expert appraisers' reports. See Appeal of Pennichuck Water Works, 160 N.H. at 41 (stating that trier of fact can "accept or reject such portions of the evidence as it [finds] proper, including that of expert witnesses"); see also Appeal of Porobic, 175 N.H. 456, 461 (2022) (concluding that the New Hampshire Board of Tax and Land Appeals (BTLA) was entitled to determine that neither the petitioner's appraisal, nor the town's assessment, accurately stated the fair market value of the property); Appeal of N.H. Elec. Coop., 170 N.H. 66, 76 (2017) ("As the trier of fact, the BTLA could properly reject any appraisal that it found did not result in a credible opinion of market value."). Thus, the court did not err when it declined to adopt either expert's value of the subject property and, instead, relied upon portions of Wakefield's report in reaching its conclusion.

The petitioner also argues that the trial court erred by determining the value of the subject property based upon the adjusted value of a single property — the property located at 177 South Shore Road — which, the petitioner asserts, is impermissible when determining fair market value based upon the comparative sales method. This argument, however, misconstrues the trial court's order. See State v. Kay, 162 N.H. 237, 242 (2011) ("Our

interpretation of a trial court order is a question of law, which we review <u>de novo</u>.").

The trial court relied on evidence in the record, including the comparison sales and adjustments accorded by Wakefield for 177 South Shore Road and 79 South Shore Road, to reach its valuation. We have previously affirmed a trier of fact's determination of fair market value when it did not adhere to a specific appraisal method and instead based the property's valuation on the evidence in the record. <u>See</u> <u>Appeal of Porobic</u>, 175 N.H. at 458-62. To the extent that the petitioner argues that the trial court was bound to determine the fair market value of the subject property by a specific appraisal method, we decline to bind the trial courts in any such manner. <u>See</u> <u>Appeal of Pennichuck Water Works</u>, 160 N.H. at 38. Instead, as the petitioner recognizes, "there are multiple appraisal techniques." Notably, in this case, the trial court was tasked with finding the value of a residential property, as opposed to property held by a corporation or public utility. We have held that, in the context of marital cases, "determining the value of any given asset is left to the sound discretion of the trial court." <u>In the Matter of Chamberlin & Chamberlin</u>, 155 N.H. 13, 16 (2007). Here, we cannot conclude that the trial court unsustainably exercised its discretion.

Accordingly, having found that the trial court's valuation of the subject property has support in the record and is not erroneous as a matter of law, we affirm.

<u>Affirmed</u>.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

5